# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico
Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>ELVINA BITSILLY, YEAR OF BIRTH 1988 | )<br>)<br>)  Case No. **25mr671**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, attached hereto and incorporated herein.

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153<br>18 U.S.C. § 1111(a) | Murder in Indian Country |

The application is based on these facts:

See attached Affidavit, attached hereto and incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent James Ridder
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ *(specify reliable electronic means)*.

Date: April 14, 2025

_____
*Judge's signature*

City and state: Albuquerque, New Mexico    Honorable John F. Robbenhaar, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ELVINA BITSILLY, YEAR OF BIRTH 1988. | Case No. _____ |

AFFIDAVIT IN SUPPORT OF

AN APPLICATION FOR A SEARCH WARRANT

I, James Ridder, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search ELVINA BITSILLY, year of birth 1988, hereafter referred to as "BITSILLY," to collect hair samples from BITSILLY, wherever she is found. As of this date, BITSILLY is currently in custody on unrelated charges at McKinley County Adult Detention Facility, Gallup, New Mexico.

2.  I am a Special Agent with the FBI and have been so employed since January 2016. I am currently assigned to the Albuquerque Field Office, Gallup Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, tribal, and federal law enforcement agencies. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute criminal complaints and search warrants issued under the authority of the United States.

3. As part of my training and experience, I have had the opportunity to collect and evaluate forensic evidence, like DNA, for evidentiary value. I also have training and experience in the proper collection, packaging, and dissemination of DNA evidence.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5. A more detailed description and photograph of BITSILLY is contained within Attachment A, which has been attached hereto and incorporated herein for reference. Your Affiant has set forth only the facts believed to be necessary to establish probable cause to believe that violations of United States Code Title 18 §1153 – Offenses Committed Within Indian Country and § 1111 – Murder were committed by BITSILLY. There is also probable cause to search BITSILLY for evidence as further described in Attachment B.

## RELEVANT STATUTES

6. This investigation concerns alleged violations of 18 U.S.C. §§ 1153 and 1111, Murder in Indian Country.  The relevant statues are as follows:

   a. Title 18 U.S.C. § 1153 - Federal courts have jurisdiction exclusive of the states over offenses enumerated in the section when committed by a tribal Indian against the person or property of another tribal Indian or other person in Indian country. *United States v. John*, 437 U.S. 634 (1978).

   b. Title 18 U.S.C. § 1111 – (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and

premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. Any other murder is murder in the second degree. (b) Within the special maritime and territorial jurisdiction of the United States, whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life; whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.

## PROBABLE CAUSE

6. On December 6, 2021, Zuni Police Department (ZPD) Criminal Investigations contacted FBI Albuquerque, Gallup Resident Agency (GRA) regarding a body found that morning on a dirt road in Zuni Pueblo. FBI agents from the GRA responded to the scene and encountered a female lying deceased on the ground in the roadway. The female, later identified as H.N. (hereinafter referred to as JANE DOE), year of birth 2002, was fully dressed, bound by tape from her arms up to her mouth, where she was gagged by what appeared to be a bandana. JANE DOE's mouth was also taped shut. Agents saw blood on the ground and side of JANE DOE's body.

7. A search of the scene revealed one empty 9mm shell casing and a roll of clear packing tape on the ground next to JANE DOE. Additionally, agents observed an empty alcoholic beverage can, multiple footprints, and tire tracks believed to be from the vehicle used to transport JANE DOE to the scene. The can was collected, and the footprints and tire tracks were documented and photographed.

8. On December 8, 2021, agents received preliminary autopsy results from the New Mexico Office of the Medical Investigator (OMI). OMI determined that JANE DOE had one

gunshot wound beneath her right eye, which was her cause of death. The round exited out the back of her neck on the right side. OMI was able to recover fragments of the round.

9. Before JANE DOE was found deceased on December 6, 2021, agents at the GRA had been aware of the murder of R.S. (hereinafter referred to as JOHN DOE), year of birth 1971, which took place in Gallup, New Mexico on December 3, 2021. Agents had learned from Gallup Police Department (GPD) that JANE DOE had been interviewed by GPD as a witness in JOHN DOE's murder. Furthermore, GPD had a suspect in custody for John Doe's murder, A.Y. (hereinafter referred to as WITNESS 1 or "W1"), year of birth 1994.

10. Agents interviewed W1 on December 10, 2021. W1 stated that she was not involved in the death of JANE DOE. W1 provided information that JANE DOE had dated B.B. (hereinafter referred to as WITNESS 2 or "W2"), year of birth 1989. W1 said that W2 hung out around the Ranchito Motel. W1 also said that W2 was the last person JANE DOE was with on the night JANE DOE was killed. W1 stated that a lot of people are scared of W2. W1 further stated that W2 also hangs out with an individual nicknamed "PUTA CHAR," later identified as C.H. (hereinafter referred to as WITNESS 3 or "W3"), year of birth 1984.

11. Agents interviewed W2 on December 16, 2021. W2 confirmed that he used to date JANE DOE, but stated they got into an argument and the last time W2 saw JANE DOE was the evening of December 4, 2021, as JANE DOE was leaving the Ranchito Motel after the argument. W2 stated that JANE DOE used to carry a black 9mm handgun. JANE DOE had told W2 that she carried it for protection. W2 claimed to not know what happened to JANE DOE.

12. Agents learned from W2 that he was sharing a room at the Ranchito with T.L. (hereinafter referred to as WITNESS 4 or "W4"), year of birth 1984. Agents interviewed W4 that same day on December 16, 2021. In that interview, W4 told agents that she had been dating W2

off and on for a couple of weeks and that W2 had cheated on W4 with JANE DOE. W4 didn't know what happened to JANE DOE and stated that she hadn't heard anyone speak about it. W4 stated to agents that JANE DOE was a prostitute and sold herself for drugs.

13. In the interview with W4, agents learned that W4 had two sons, one aged 15 years old and the other, 17 years old. W4 stated that the 15-year-old, identified as A.B. (hereinafter referred to as WITNESS 5 or "W5"), year of birth 2006, was dating BITSILLY. W4 estimated that BITSILLY was maybe 35 years old (agents later confirmed BITSILLY's year of birth to be 1988, making BITSILLY 33 years old at the time of the interview).

14. Agents learned that BITSILLY was staying at the Ranchito Motel as well, and approached BITSILLY for an interview on December 16, 2021. In that interview, BITSILLY stated that she would only see JANE DOE when JANE DOE was with W2. Additionally, JANE DOE had gone with W3 to Albuquerque when W2 was in the hospital there. BITSILLY stated that W3 had beef with everyone and W3's relationship with JANE DOE had recently changed. W3 and JANE DOE were no longer friendly with each other. BITSILLY didn't know why the relationship had changed.

15. Agents attempted to interview W3 on January 3, 2022. W3 was in custody at the time at the McKinley County Adult Correction Facility on unrelated charges. W3 refused to speak and requested a lawyer.

16. On January 6, 2022, agents interviewed JANE DOE's father, C.N. (hereinafter referred to as WITNESS 6 or "W6"), year of birth 1967. W6 provided that on January 5, 2022, while W6 was in the parking lot of his place of employment, W6 was approached by an unknown male. That individual told W6 that W3 was involved in JANE DOE's death. The individual also stated that D.H. (hereinafter referred to as WITNESS 7 or "W7"), year of birth 1967, was the last

person to see JANE DOE alive. Agents learned that later, on January 6, 2022, W6 was approached by a different unknown male. This individual told W6 that BITSILLY had admitted to killing JANE DOE. In both instances, W6 did not get the names of the individuals providing the information.

17. On January 26, 2022, agents interviewed W7. In that interview, W7 told agents that on a Sunday evening (likely the evening of December 5, 2021) around 10:40 to 11:15 p.m., he was walking with his friend Tessa. They traveled to the Allsups Store located at 112 Arnold St. in Gallup, New Mexico, and ran into JANE DOE there. W7 went into the store and JANE DOE and Tessa stayed outside. When W7 came back out, JANE DOE was gone. Tessa told W7 that BITSILLY and W3 were in a vehicle at the Allsups. BITSILLY got out of the vehicle, cussed JANE DOE out, and told JANE DOE to get into the vehicle. They then drove off. (JANE DOE was found deceased early the next morning).

18. W7 told agents that he had later heard that BITSILLY was telling people she shot or stabbed JANE DOE.

19. On February 9, 2022, the FBI AQ Evidence Control Room (ECR) sent evidence collected during the investigation to the FBI Laboratory to be examined for additional evidence. According to an FBI Laboratory Trace – Hairs/Fibers report, dated May 15, 2023, multiple head hairs and head hair portions were recovered from the tape on JANE DOE's neck, chest, and arms, and the roll of tape recovered from the scene. The FBI Laboratory determined that the hairs recovered from these evidence items could not be from JANE DOE. However, without other hair samples to compare the evidence to, the lab was unable to make a positive identification.

20. Based on my training and experience, I know that trace evidence such as hair – being DNA evidence – may be transferred during contact in the commission of a homicide. DNA

evidence is extremely helpful in identifying individuals and linking suspect(s) to crimes. Such DNA evidence may be matched to the suspect(s) or it may be used for elimination purposes. Thus, a confirmation sample from BITSILLY must be acquired to provide a conclusion about the possible DNA association. BITSILLY's DNA in the form of a hair sample will help confirm her involvement in JANE DOE's murder, or help exclude her as a suspect. As such, I request a search warrant to obtain a hair sample from BITSILLY's person.

21. To establish Indian Country jurisdiction under 18 U.S.C. § 1153, investigators determined that both JANE DOE and BITSILLY are enrolled members of the Navajo Nation, and thus are Indians under federal law. Additionally, the location where JANE DOE's body was found is within the exterior boundaries of the Zuni Pueblo in the District of New Mexico and is thus Indian Country under federal law.

## JURISDICTIONAL STATEMENT

22. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the "district court of the United States (including a magistrate judge of such court)… that – (i) has jurisdiction over the offense being investigated."

## METHOD OF EXECUTION

23. The hair samples from BITSILLY will be obtained pursuant to approved procedures, without unnecessary discomfort to BITSILLY, in private, and under circumstances where she will feel little or no pain or embarrassment.

24. Should BITSILLY refuse to allow me to collect hair samples pursuant to this search warrant, I request the Court's permission to use reasonable force, only if necessary, to execute this search warrant.

## CONCLUSION

25. Based on the foregoing, your affiant submits that there is probable cause to believe that the above-described individual has committed a violation of 18 U.S.C. §§ 1153, 1111: Murder in Indian Country, and in light of the above information, there is probable cause to believe that obtaining a hair sample from ELVINA BITSILLY is necessary in order to complete the forensic examination of DNA analysis and comparison with samples collected from lawfully-obtained evidence in this case.

49. Your affiant therefore requests that the attached warrant be issued authorizing the search of ELVINA BITSILLY, the person described in Attachment A, for seizure of BITSILLY's hair samples, described in Attachment B, by reasonable means, including force if BITSILLY physically resists, to be used for DNA testing and comparison by the FBI Laboratory.

50. Assistant United States Attorney Eliot Neal has reviewed and approved this affidavit for legal sufficiency to establish probable cause.

Respectfully submitted,

_____
FBI Special Agent James Ridder

Telephonically SUBSCRIBED and SWORN to before me this 14th day of April, 2025.

_____
THE HONORABLE JOHN F. ROBBENHAAR
United States Magistrate Judge

8

## ATTACHMENT A

## Person to Be Searched

The person of ELVINA BITISLLY, Year of Birth 1988, wherever found.



## ATTACHMENT B

### Particular Things to be Seized

The following material, which constitutes evidence of the commission of a criminal offense, namely violations of 18 U.S.C. §1153 offenses committed within Indian country and §1111 – Murder:

1. Known head hair samples consisting of twenty-five (25) full-length hairs from all areas of the scalp from ELVINA BITSILLY.